UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRISCO LEAEA,<br>    Plaintiff,<br>    v.<br>UNITED AIRLINES INC.,<br>    Defendant. | Case No. 18-cv-00749-SI<br><br>**ORDER DENYING DEFENDENT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 40, 43, 44 |

On June 29, 2018, the Court held a hearing on defendant United Airlines, Inc.'s motion to dismiss plaintiff Frisco Leaea's first amended complaint. For the reasons set forth below, the Court DENIES defendant's motion.

**BACKGROUND**

Defendant United Airlines, Inc. ("United") employed plaintiff as a Ramp Service Employee at San Francisco International Airport, beginning May 2012. First Amended Complaint ("FAC") ¶ 6 (Dkt. No. 29). While employed, plaintiff "performed his job duties in an exemplary manner." *Id.* at ¶ 7. On August 19, 2015, plaintiff injured his left big toe "at work." *Id.* at ¶ 8.

About five days later, plaintiff was treated at defendant's "Airport Clinic" and an X-ray examination revealed "a fracture to Plaintiff's left big toe." *Id.* at ¶ 10. Subsequently, plaintiff's personal doctor "deemed Plaintiff temporarily and totally disabled." *Id.* Plaintiff "requested a leave of absence" from August 26, 2015 to October 12, 2015, "as a reasonable accommodation for his disability." *Id.* Plaintiff alleges that "when Plaintiff returned to work in or around October 2015, following his leave of absence related to his August 2015 disability, Defendant counted as occurrences under its no-fault attendance policy the time Plaintiff was absent from work due to his

disability, and terminated Plaintiff's employment for violation of its attendance policy." *Id*. ¶ 11. Plaintiff alleges that "Defendant discriminated against Plaintiff on account of his disability by terminating Plaintiff's employment for time Plaintiff could not work due to his disability and/or terminated Plaintiff's employment in retaliation for his need for a leave of absence accommodation because of his disability and/or as the result of its failure to accommodate Plaintiff's disability." *Id*. ¶ 12.

Defendant's Attendance Policy is contained in a Collective Bargaining Agreement ("CBA") between United and the International Association of Machinists & Aerospace Workers. Dkt. No. 6-2 (Attendance Policy).[1] The Attendance Policy defines "absence" as: "[a]ny single specific period of continuous time away from work for a single reason." *Id.* at 2. The Attendance Policy defines "points" as: "[a] unit of measurement used to track absence and tardiness." *Id.* at 3. The Attendance Policy also provides that: "[a]bsence from duty of the following reasons will not be assessed a point: Minor Tardy; AUTO; Vacations; Holidays; Trade Days Off; Personal Emergency Leave; FMLA—Any absence covered by the Company's Family and Medical Leave policy; Jury Duty; Approved Leaves of Absence; Occupational Injury Time (OI); and Company Declared Adverse Weather Day (officially declared by management.)" *Id.*

Conversely, the Attendance Policy will assign points for the following absences:

| Leaving work without notification to immediate supervisor | Up to Termination – Hearing |
|---|---|
| No Call, No Show | 3 points |
| **1st Occurrence in a 12 month period of failure to report for an assigned overtime shift or leaving work early with notification to management but without approval | 1 point |
| 2nd or subsequent occurrence of failure to report for assigned overtime or leaving work with notification to management, but without approval | 3 points |
| Contact Center: Inadvertently leaving | 1 point |

---

[1] In ruling on defendant's motion to dismiss the original complaint, the Court took judicial notice of the CBA. Dkt. No. 27 at 6 n.2.

2

| work without notification for any type of flex shift or additional shift time. | |
| --- | --- |
| Late Reported Personal Absence | 2 points |
| Reported Personal Absence | 1 point |
| Tardy | ½ point |

*Id*. at 5. The Attendance Policy provides a discipline policy and guidelines for tracking absences that accrue attendance points:

> Management will track attendance points on a rolling 12 months of active service. . . . Attendance points will be frozen while an employee is on an unpaid or inactive status and be re-activated once the employee returns to paid/active status. The 12 month calendar will then be re-activated. Notwithstanding the rolling 12 month calendar, if an employee reaches the level of Termination Warning, the employee will remain at Termination Warning and no points will be re-accrued for a full six month period from the date the employee is placed on Termination Warning. . . .

*Id.* The point system used to manage accountability for absences states:

| **Point Range** | **Point Range** |
| --- | --- |
| 7.0 to 4.0 points | Acceptable Attendance |
| 3.5 to 2.5 points | Documented Verbal Warning |
| 2.0 to 1.5 points | Written Warning |
| 1.0 to 0.5 points | Termination Warning (Meeting Required) |
| 0 points | Termination |

*Id*. at 6. Employees start with a balance of 7 points and points are deducted for impermissible absences. *Id.*

United's Reasonable Accommodation Process ("RAP") Policy, which is also part of the CBA, "is the interactive process where United works with employees who, in order to perform their jobs, may be in need of an accommodation due to a medical condition or restriction." Dkt. No. 6-5 at 1 (RAP Policy). "During the RAP meeting, the employee's medical restrictions are reviewed and discussed in an effort to identify any reasonable accommodation that will enable the employee to perform the essential functions of the employee's current position." *Id.* "Depending on the circumstances and the operational needs of a department, a reasonable accommodation may involve (but is not limited to): providing a leave of absence. . . ." *Id.* at 2. "The RAP process is

3

designed to be an interactive process between the employee and the Company. The RAP Process is an ongoing one, meaning that if an employee's restrictions change in any way, or a position opens up that was previously unavailable, the employee and Company should meet again and continue the interactive discussion." *Id.*

After his termination, plaintiff filed a grievance through his union challenging the termination. FAC ¶ 14(a). The grievance proceedings started in January 2016 and ended on or about September 20, 2016. *Id*. The FAC alleges that "[t]hroughout the grievance process, Plaintiff alleged that Defendant unfairly terminated his employment because he was punished for absences that were related to his disability by providing him with a leave of absence to treat and recover from his disability without repercussions." *Id.*[2] United denied the grievance.

On January 3, 2018, plaintiff sued defendant in San Mateo County Superior Court, alleging claims under federal and California law. The complaint alleged, *inter alia*, that United discriminated against him because of his disability by terminating plaintiff's employment in retaliation for plaintiff's leave of absence and by failing to accommodate plaintiff's disability. Dkt. No. 1. Defendant removed this action to federal court on the basis of federal question and diversity jurisdiction. Defendant then moved to dismiss the complaint, arguing all of plaintiff's claims should be dismissed for failure to state a claim and that plaintiff's state law claims were preempted. Dkt. No. 6 at 1. The Court granted in part and denied in part the motion to dismiss with leave to amend, and deferred the preemption question until plaintiff filed an amended complaint clarifying the nature of his claims. Dkt. No. 27.

---

[2] Defendant contends that plaintiff and his union representatives did not, in fact, make these arguments during the grievance process, and defendant requests that the Court take judicial notice of a letter that United sent plaintiff denying his grievance at step 3 of the CBA's grievance process. Defendant argues that the letter, in which United sets forth its reasons for denying plaintiff's grievance, shows that plaintiff and his union representatives challenged the termination on grounds unrelated to disability. The Court declines to take judicial notice of this document, as the letter is neither "incorporated by reference in the complaint," nor does it "form the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Further, even if the Court took judicial notice of this document, the Court finds that United's statements in the letter regarding the arguments made by plaintiff in his grievance process are not, on their face, necessarily inconsistent with the allegations in the FAC. In any event, the Court finds that the fact that plaintiff and his union representatives may have challenged the termination on non-disability grounds is not a basis for dismissal of the complaint.

4

On May 1, 2018, plaintiff filed the FAC, which alleges five causes of action under California law. The FAC alleges that defendant: (1) unlawfully discriminated on the basis of plaintiff's disability in violation of the Fair Housing and Employment Act ("FEHA"); (2) failed to accommodate plaintiff's disability in violation of the FEHA; (3) failed to engage in the interactive process in violation of the FEHA; (4) retaliated against plaintiff for asserting his rights under the FEHA; and (5) wrongfully terminated plaintiff in violation of public policy set forth in the FEHA, the California Family Rights Act ("CFRA"), and California Labor Code sections 246.5 and 98.6. Dkt. No. 29 at 6-12. The FAC also states, "Plaintiff does not contend that there was a dispute under the CBA between Plaintiff and Defendant related to his employment and/or termination." *Id.* at ¶ 13.[3]

Defendant has moved to dismiss the FAC, arguing that all of plaintiff's claims should be dismissed under Rule 12(b)(6) and 12(b)(1) based upon federal preemption.

## LEGAL STANDARDS

### I. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and

---

[3] United contends that this allegation is inconsistent with the original complaint because the original complaint alleged that United misapplied provisions of the Attendance Policy and RAP Policy against plaintiff. However, plaintiff has consistently alleged that United terminated him pursuant to the Attendance Policy, and he has maintained that his discrimination and retaliation claims are independent of the CBA and that he was terminated on account of his disability.

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If a court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

As a general rule, courts may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, courts "may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *Ritchie*, 342 F.3d at 909 (citing *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). Courts may not take judicial notice of facts in the public record that are subject to reasonable dispute. *Lee*, 250 F.3d at 690.

**II. Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). A complaint will be dismissed if,

6

looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual.").

When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "In resolving a Rule 12(b)(1) factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation and internal brackets omitted).

## DISCUSSION

### I. Preemption under the Railway Labor Act

Defendant contends that plaintiff's claims are minor disputes under the CBA and are therefore preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-65, 181-88. Defendant has the burden to demonstrate preemption. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995); *Martinez v. Kaiser Found. Hosps.*, C-12-1824 EMC, 2012 WL 2598165, at *2 (N.D. Cal. July 5, 2012).

"Whether federal law pre-empts a state law establishing a cause of action is a question of congressional intent." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985)). "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Id.* (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557,

562 (1987)); *see also Alaska Airlines Inc. v. Schurke*, ___ F.3d ___, No. 13-35574, 2018 WL 3636431, at *11 (9th Cir. Aug. 1, 2018) (en banc) ("In the RLA and LMRA § 301 context, the 'purpose of Congress' is to protect the role of grievance and arbitration and of federal labor law in resolving CBA disputes, not to alter or displace state law labor rights."). The RLA provides a mandatory arbitral mechanism for resolving disputes, including "minor disputes" that involve the "application or interpretation" of a CBA "covering rates of pay, rules, or working conditions." *Norris*, 512 U.S. at 252-53, 255-56; 45 U.S.C. § 151(a). Thus, the RLA preempts state law claims upon "a determination that [the plaintiff's] complaints constitute a minor dispute." *Norris*, 512 U.S. at 253.

A minor dispute is a claim "that may be conclusively resolved" by a CBA. *Id.* at 262-63 (citing *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 305 (1989)); *accord Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999). In other words, a minor dispute exists "only if [the state law claim] is dependent on the interpretation of a [CBA]." *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996) (citing *Norris*, 512 U.S. at 262-63); *see*, *e.g.*, *Guidry v. Marine Engineers' Beneficial Ass'n*, No. C 05-03960 CRB, 2007 WL 707511, at *4, 6 (N.D. Cal. Mar. 6, 2007) (finding no minor dispute because there was no dispute over the interpretation of CBA terms and state law claims are only preempted when the resolution of a discrimination claim itself hinges on the interpretation of a CBA).

The Ninth Circuit has recently articulated a two-part test to determine whether a claim a preempted by the RLA. "First, to determine whether a particular right is grounded in a CBA, we evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Schurke*, 2018 WL 3636431, at *7 (internal citation omitted).

> If a claim arises entirely from a right or duty of the CBA—for example, a claim for violation of the labor agreement, whether sounding in contract or in tort—it is, in effect, a CBA dispute in state law garb, and is preempted. In such cases, the CBA is the "only source" of the right the plaintiff seeks to vindicate. There is thus no part of the claim that "do[es] not require construing [the] collective-bargaining agreement[ ]," and as to which litigation in court, rather than though the grievance and arbitration system, would be appropriate. For the same reason, there is no part of the claim in which the uniform body of federal labor law does not control the resolution of the parties' dispute.

8

> By contrast, claims are not simply CBA disputes by another name, and so are not preempted under this first step, if they just refer to a CBA-defined right; rely in part on a CBA's terms of employment; run parallel to a CBA violation; or invite use of the CBA as a defense. . . .

*Id*. at *7-8 (footnotes and internal citations omitted).

"Second, if a right is not grounded in a CBA in the sense just explained, we ask whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Id.* at *8. The Ninth Circuit has instructed that "'[i]nterpretation' is construed narrowly; 'it means something more than 'consider,' 'refer to,' or 'apply.'" *Id.* at *8 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)). "Accordingly, at this second step of an RLA or LMRA § 301 preemption analysis, claims are only preempted to the extent there is an active dispute over the meaning of contract terms." *Schurke*, 2018 WL 3636431, at *8 (internal quotations and citation omitted). It is not enough "that resolving the state law claim requires a court to refer to the CBA and apply its plain or undisputed language—for example, to discern that none of its terms is reasonably in dispute[]; to identify bargained-for wage rates in computing [a] penalty[]; or to determine whether [the CBA] contains a clear and unmistakable waiver of state law rights." *Id*. (internal quotations and citations omitted); *see also Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir. 1993) ("[R]eference to or consideration of the terms of a [CBA] is not the equivalent of interpreting the meaning of the terms.").

The Ninth Circuit also clarified that "[n]otably, the result of preemption at the second step is generally not the extinguishment of the state law claim." *Schurke*, 2018 WL 3636431, at *8. Instead, "if, at the second stage of the analysis, a state law claim depends on a dispute over the meaning of a CBA, it is only 'to that degree preempted.'" *Id.* (quoting *Kobold v. Good Samaritan Regional Med. Ctr.*, 832 F.3d 1024, 1036 (9th Cir. 2016)). "That is, state law claims are preempted by the RLA or LMRA § 301 'only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement.'" *Id.* (quoting *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 409 n.8 (1988)).

In *Schurke*, the Ninth Circuit held that a claim premised on a state law right to reschedule vacation leave for family medical purposes was not preempted by the RLA, even though the

9

worker's underlying right to vacation leave was covered by a CBA. At the first step of the analysis, the court held that the plaintiff's claim did not arise entirely from the CBA. "Masserant has alleged a violation of the [statute's] independent state law right to use banked vacation days. . . . Masserant's claim invokes a state law right that applies to all workers, whether CBA-covered or not, and gives rise to a state law dispute, not a dispute concerning the meaning of the CBA." *Schurke*, 2018 WL 3636431, at *12. At the second step, the court held that the plaintiff's claim did not require construction of the CBA:

> The claim of course relies on the terms and conditions of employment established by the CBA, in that Masserant's banked vacation days exist only by virtue of her having earned them in accordance with a workplace policy incorporated in the CBA. And the claim may be aided by reference to certain other CBA provisions, such as those making banked vacation immediately available for exchange, personal medical leave, maternity leave, bereavement leave, or cash-out. But reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment.

*Id*. (internal citation omitted).

With these principles in mind, the Court now analyzes plaintiff's claims.

## II. Analysis of plaintiff's claims

Plaintiff alleges that United "discriminated against Plaintiff on account of his disability by terminating plaintiff's employment for time Plaintiff could not work due to his disability and/or terminated Plaintiff's employment in retaliation for his need for a leave of absence accommodation because of his disability and/or as the result of its failure to accommodate Plaintiff's disability," all in violation of the FEHA. FAC ¶ 12. Plaintiff also alleges that United "failed to engage in a timely, good faith, interactive process with Plaintiff to accommodate his known disability in violation of the FEHA," and that plaintiff's termination violated public policy as set forth in the FEHA and the CFRA. *Id*. ¶¶ 32, 45.

"In RLA cases . . . , courts must look to the source of the right asserted by the plaintiff." *Espinal*, 90 F.3d at 1456 (citing *Norris*, 512 U.S. at 257-59). Thus, a "discrimination claim need not be preempted merely because certain aspects of the [CBA] govern . . . discharges." *Jimeno*, 66 F.3d at 1525 (internal quotation marks omitted). In *Ramirez*, the court explained "the [CBA] will

likely be referred to by [plaintiff] and [defendant] to determine the terms and conditions of [plaintiff's] employment. But [plaintiff's] underlying cause of action is that [defendant] discriminated against her in applying and/or altering those terms and conditions. Although the inquiry may begin with the [CBA], it certainly will not end there." *Ramirez*, 998 F.2d at 748-49.

Here, plaintiff's claims arise from the FEHA (and the CFRA, with regard to wrongful termination), and do not seek to vindicate a right that is purely created by the CBA. As plaintiff argues, his claims would exist even if he was not covered by a CBA. The Ninth Circuit has generally found that "rights created by . . . [FEHA] are independent of a CBA and thus claims brought pursuant to" FEHA are not preempted by federal law, such as the RLA. *Saridakis*, 166 F.3d at 1276-77 (finding plaintiff's disability discrimination claim was not a minor dispute "and therefore [not] subject to the RLA's dispute resolution mechanism"); *see also Schurke*, 2018 WL 3636431, at *12 (holding the plaintiff's claim was not preempted at step one because "Masserant's claim invokes a state law right that applies to all workers, whether CBA-covered or not, and gives rise to a state law dispute, not a dispute concerning the meaning of the CBA"); *Guidry*, 2007 WL 707511, at *4 (citing Ninth Circuit decisions that "rest upon the view that the rights conferred by [FEHA] are defined and enforced under state law without reference to the terms of any [CBA] . . . , and that actions asserting those rights are thus independent of [any CBA]") (internal citations and quotation marks omitted)).

Defendant's preemption arguments largely focus on the second step of the analysis, namely whether the claims require interpretation of the CBA.[4] Defendant argues that the Court will be required to interpret and apply the Attendance Policy and the RAP Policy in order to resolve all of plaintiff's claims. Defendant argues that interpretation of the CBA is required because "Plaintiff explicitly claims United interpreted and applied the Attendance Policy against him in a discriminatory manner, which resulted in him suffering an adverse employment action-termination." Motion at 14 (Dkt. No. 40). Defendant relies on plaintiff's allegation that United

---

[4] Defendant's briefing addresses plaintiff's claims as a whole and separately. However, the arguments regarding preemption are largely the same for all the claims, specifically whether the claims require the interpretation of the CBA.

11

"counted as occurrences under its no-fault attendance policy the time plaintiff was absent from work due to his disability, and terminated Plaintiff's employment for violation of its attendance policy." FAC ¶ 11. For example, defendant argues that the Court will be required to analyze and interpret the Attendance Policy to determine such issues as what constitutes an absence, how the point system works for purposes of counting absences, and how the progressive discipline policy applies generally and as to plaintiff.

Plaintiff responds that his claims do not require the interpretation of the CBA, and that his claims turn on whether defendant discriminated and retaliated against him on the basis of disability, failed to provide reasonable accommodations for his disability, and failed to engage in the interactive process. Plaintiff argues that at most the Court will be required to refer to the CBA, and that the parties do not dispute the meaning of any terms in the CBA. Plaintiff contends that this case is similar to *Carmona v. Southwest Airlines Co.*, 536 F.3d 344 (5th Cir. 2008), in which the Fifth Circuit held that a flight attendant's disability discrimination claims were not barred by the RLA. In *Carmona*, Southwest Airlines terminated the plaintiff for excessive absenteeism pursuant to an absence policy contained in a CBA. After challenging the termination as being in violation of the CBA through an unsuccessful grievance, the flight attendant filed suit alleging that the termination violated the Americans with Disabilities Act. The district court dismissed the case, finding that the plaintiff's claims were precluded by the RLA.[5] The Fifth Circuit reversed, holding that "[a]s provisions of the CBA are relevant to, but *not* dispositive of, the resolution of Carmona's claims, his claims do not constitute a minor dispute under the RLA." *Id.* at 349 (emphasis in original).

> Even though a court would have to refer to the CBA to consider fully each of the alleged acts of disparate treatment, there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination. Carmona's factual allegations that . . . his chronic illnesses were the real reason he was fired, do not bring the meaning of any CBA provisions into dispute.

*Id.*

---

[5] Because the *Carmona* plaintiff alleged federal discrimination claims, the courts analyzed whether those claims were *precluded* by the RLA, as opposed to preempted. *See id.* at 347 n.2.

12

The Court concludes under the second step of the analysis that plaintiff's claims do not require interpretation of the CBA, and are therefore not preempted. Similar to the flight attendant in *Carmona*, plaintiff alleges that defendant terminated his employment pursuant to an absence policy contained in a CBA, and that he was fired on account of his disability. While the Court may be required to refer to the CBA to resolve plaintiff's claims (and United's defenses)[6], plaintiff's claims do not require the interpretation of disputed terms in the CBA. *See Schurke*, 2018 WL 3636431, at *8 ("'Interpretation' is construed narrowly; 'it means something more than 'consider,' 'refer to,' or 'apply.'") (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)). Although defendant has cited portions of the CBA that may be relevant to plaintiff's claims, defendant has not identified an "active dispute over the meaning of contract terms." *Schurke*, 2018 WL 3636431, at *8 (internal quotation marks and citation omitted). To the extent the parties dispute whether United properly assessed points for plaintiff's absences under the Absence Policy, the Court will be required to refer to that policy and make a factual determination; that evaluation does not require interpretation over disputed terms of the CBA.

Similarly, although the Court may be required to refer to the RAP Policy in connection with evaluating plaintiff's reasonable accommodation and interactive process claims,[7] defendant has not shown that the Court would be required to interpret any disputed terms in order to adjudicate those claims. The interactive process requires "communication and good-faith exploration of possible accommodations between employers and individual employees" to identify "an accommodation that allows the employee to perform the job effectively." *Nadaf-Rahrov v. Neiman Marcus Group, Inc.,* 166 Cal. App. 4th 952, 984 (2008) (internal quotation marks

---

[6] "[R]eliance on CBA provisions to defend against an independent state law claim does not trigger . . . preemption." *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002); *see also Saridakis*, 166 F.3d at 1277 (finding defendant's reliance on the CBA as part of its defense does not constitute a minor dispute).

[7] "While a claim of failure to accommodate is independent of a cause of action for failure to engage in an interactive dialogue, each necessarily implicates the other." *Moore v. Regents of the University of California*, 248 Cal. App. 4th 216, 242 (2016) (citing *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 54 (2006)).

1   omitted); *see* Cal. Gov't Code § 12940(n). Both parties "must communicate directly, exchange
2   essential information and neither side can delay or obstruct the process." *Nadaf-Rahrov*, 166 Cal.
3   App. 4th at 984-85. There is no need to interpret the CBA to determine whether the parties failed
4   to communicate and explore in good faith possible accommodations for the plaintiff.

5   Finally, the Court finds that plaintiff's retaliation claim requires a factual inquiry into any
6   retaliatory motive by the employer. *Norris*, 512 U.S. at 266. "Purely factual questions about an
7   employee's conduct or an employer's conduct and motives do not require a court to interpret any
8   term of the [CBA]." *Id.* at 261; *see also Livadas*, 512 U.S. at 123.

9   As the Court found in its previous order, defendant's reliance on *Silva v. USP Reddaway
10  Inc.*, No. 17-CV-01354-LB, 2017 WL 2117397 (N.D. Cal. May 15, 2017), is misplaced. In *Silva*,
11  the plaintiff worked as a pickup and delivery truck driver, and after he experienced shoulder pain,
12  he requested a job transfer to long-distance driving as a reasonable accommodation. The company
13  denied the request, and the plaintiff sued, alleging breach of the CBA, common law
14  discrimination, and disability discrimination under the FEHA. *Id*. at *1. The plaintiff conceded
15  that the CBA breach claim was preempted, and therefore the court only addressed whether the
16  disability claims were preempted. *Id*. The court found that Silva's discrimination claims were
17  preempted because "Mr. Silva's claims will likely 'necessitate determining whether CBA imposed
18  an obligation on' Reddaway to offer him a line-driving position or whether, as the defendant
19  claims, its obligations under the CBA prevented it from doing so—which could disprove Mr.
20  Silva's claim that Reddaway wrongfully discriminated against him." *Id*. at *4 (footnote omitted).
21  The court found, "[i]t is more than just a question of having to 'refer' to or fleetingly 'consult' the
22  CBA. Whether Reddaway discriminated against Mr. Silva by not assigning him to line driving
23  will need some substantive assessment of the CBA to determine whether the terms of that
24  compact—terms on job assignment and seniority at least—allowed the defendant to do anything
25  else." *Id.* The *Silva* court distinguished the plaintiff's claims from "freestanding" discrimination
26  claims cases that do not implicate the terms of the CBA. *Id*. The *Silva* court held that the
27  plaintiff's claims were preempted by the federal Labor Management Relations Act (LMRA)
28  because the court found "[plaintiff's] theory [was] that [the defendant] discriminatorily breached

14

the CBA itself." *Id.* at *5. Here, in contrast, plaintiff has not alleged that defendant breached the CBA, and plaintiff's claims do not require the interpretation of any disputed CBA term. Thus, *Silva* is distinguishable.[8]

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to dismiss plaintiff's FAC.

**IT IS SO ORDERED**.

Dated: August 9, 2018

_____
SUSAN ILLSTON
United States District Judge

---

[8] Further, *Silva* was decided prior to the Ninth Circuit's recent decision in *Schurke*, which clarified the test for determining preemption.